the estate in bankruptcy, and now seek to prove their debts against the estate acquired after the bankruptcy in the hands of the administrator, and to come in on a footing with creditors who became such after the filing of the petition in bankruptcy. This, in my judgment, they cannot do, in a case where if the bankrupt had lived he would have been entitled to a discharge from the debts of the petitioners, and they cannot, as I am inclined to think, successfully object to such a discharge on the sole ground that the final oath required by section twenty-nine of the act has not been taken. Notwithstanding the death, the proceedings are to be "continued and concluded" in the same manner as if the debtor had lived, and with the like effect. Section 12. The death dispenses with the necessity of the final oath, and the discharge, if, indeed, a formal discharge in such a case is necessary, may be entered as of a time when the bankrupt was in life. Affirmed.

NOTE. As to the power of the court to enter orders and judgment nunc pro tunc, notwithstanding the death of a party, see Freem. Judgm. 34. If one party to an action die, during a curia advisari vult, judgment may be entered nunc pro tunc, for the delay is the act of the court and therefore neither party should suffer. Broom, Leg. Max. 123; 1 Strange, 426. In Miles v. Williams, 9 Adol. & E. (N. S.) 47, demurrers were set for argument in Trinity term, 1844, but were not argued until May, 1845, when judgment was given on them for the plaintiff. The plaintiff having died in March, 1845, the court made absolute an order to enter judgment as of Trinity term, 1844, on the ground that the issues of law had been delayed by the act of the court through press of business, until the plaintiffs' death. In Blewett v. Tregonning, 4 Adol. & E. 1002. judgment was entered in May, 1835, upon a verdict for the plaintiff, which was rendered in the spring of 1834. A like entry was made in Evans v. Rees, 12 Adol. & E. 167, in 1840 on a verdict rendered in 1839, the judgment to be of Trinity term, 1839; the party in whose favor it was entered having died after verdict, but before judgment. The practice in chancery is the same. 2 Daniell, Ch. Prac. 1027. The American cases recognize and adopt the English practice. In Campbell v. Mesier, 4 Johns. Ch. 334. the case was submitted on the 26th of November, 1819, after which, but before decree, Mesier died. In 1820, the chancellor pronounced his decree, but ordered it to be entered as of November 26, 1819, the day of submission. In Wood v. Keyes, 6 Paige. 478. the cause was heard and submitted on the 20th of April 1836. In the meantime, and before decree, the cestui que trust died. Decree for complainant was rendered on May 2, 1837. but the chancellor directed it to be entered as of April 20, 1836. Hess v. Cole, 3 Zabriskie (23 N. J. Law). 116. is to the same effect. In Perry v. Wilson, 7 Mass. 393. the case was submitted to the court at the May term, 1810; final decision was rendered at May term. 1811, before that the defendant had died. Upon this fact being suggested to the court, judgment was rendered as of the preceding term in May, the chief justice remarking, "that when action was delayed for the convenience of the court, they would always take care that no party should suffer by such delay." When the plaintiff was non-suited at the trial, and applied for a new trial, and died while the motion was under advisement. the defendant was permitted to enter judgment as of the term succeeding the

non-suit, the plaintiff being then in full life. Spalding v. Congdon, 18 Wend. 543; Bank of United States v. Weissiger, 2 Pet. [27 U. S.] 481; Clay v. Smith, 3 Pet. [28 U. S.] 411; Vroom v. Ditmas, 5 Paige, 528; Pool v. Loomis, 5 Ark. 110.

## Case No. 18,174.
### YOUNG v. The ROBERTSON.
[See Case No. 11,923.]

YOUNG (RUGGLES v.). See Case No. 12,-122.

YOUNG (RYAN v.). See Case No. 12,188.

YOUNG (STRATTON v.). See Case No. 13,-528.

## Case No. 18,175.
### YOUNG et al. v. TAVEL.
[Bee, 228.] [1]

District Court, D. South Carolina. June, 1806.

PRIZE—CONDEMNATION AND SALE—RESTITUTION.

Property purchased at a provisional sale at Barracoa, afterwards confirmed by sentence of condemnation of the constituted authority at Guadaloupe, is not liable to restitution in a suit in personam against the purchaser's consignee.

BEE, District Judge. This is a suit in personam against Tavel, to recover the value of twenty hogsheads and eighteen barrels of sugar, and a large parcel of logwood; part of the cargo of the schooner Enterprize, belonging to the libellants. The libel states that this vessel was captured on the high seas by two French privateers, and carried into Barracoa, where the said articles were taken out of the Enterprize, put on board the brig Lear belonging to the defendant, and brought from Barracoa to Charleston. where they were landed. The libel prays that they may be restored. Tavel's claim and answer admits the capture of said schooner by two French privateers duly authorized to seize all vessels trading with the revolted negroes of St. Domingo; it admits also that she was sold at Barracoa with her cargo, by order of the agent of the government of Guadaloupe then residing at Barracoa. It states that the sale was provisional, and the money ordered to be deposited, to abide the definitive sentence of the government of Guadaloupe. This was afterwards obtained, and a copy of it, marked B, is filed with the answer. The defendant says he was unapprised that the sugar and logwood mentioned in the libel were part of the said cargo, but admits that he received twenty-nine hogsheads and sixteen barrels of sugar from his agent at Barracoa, which were shipped on board the brig Lear, on account of the proceeds of a shipment made by him to Barracoa. The claimant pleads the decree of condemnation and sale of said articles in bar to the juris-

[1] [Reported by Hon. Thomas Bee, District Judge.]